UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| AT ML LEASEHOLD HI, LLC, A DELAWARE LIMITED LIABILITY COMPANY,<br><br>        Plaintiff,<br><br>    vs.<br><br>RCSH OPERATIONS, INC., A CALIFORNIA CORPORATION,<br><br>        Defendant. | CIV. NO. 21-00236 LEK-WRP |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the Court is Plaintiff/Counterclaim Defendant AT ML Leasehold HI, LLC's ("AT ML") Motion for Judgment on the Pleadings ("Motion"), filed on September 3, 2021. [Dkt. no. 28.] The Motion came on for hearing on October 29, 2021. On November 29, 2021, an entering order was issued informing the parties of the Court's ruling on the Motion. [Dkt. no. 39.] The instant Order supersedes that entering order. AT ML's Motion is hereby granted in part and denied in part for the reasons set forth below. Specifically, the Motion is granted as to the fifth and eighth counts in Defendant/Counterclaimant RCSH Operations, Inc.'s ("RCSH" or "Ruth's Chris") Counterclaim,[1] and

---

[1] AT ML filed its Complaint on May 18, 2021, and RCSH filed its Answer and Affirmative Defenses ("Answer"), which included the Counterclaim, on June 14, 2021. [Dkt. nos. 1, 11.]

the Motion is denied as to the remaining claims in the Counterclaim.

**BACKGROUND**

AT ML is the landlord and RCSH is the tenant under a commercial lease. Complaint at ¶ 1; Answer at ¶ 1 (admitting that they are parties to a lease); see also Complaint, Exh. 1 (The Shops at Mauna Lani Kohala Coast, Hawaii; Shopping Center Lease by and between Aloha Investment Group III, L.L.C. ("Aloha Investment"), as landlord, and Lava Coast Steak House, LLC ("Lava Coast"), as tenant, dated 9/6/05 ("Lease")). According to the Complaint, AT ML is the successor-in-interest to Aloha Investment and the current owner of "The Shops at Mauna Lani" in Waimea, Hawai`i ("the Shopping Center"), where the leased space at issue in this case ("the Premises") is located.[2] [Complaint at ¶¶ 1, 10.]

AT ML, as landlord; Lava Coast, as assignor; and RCSH, as assignee, entered into the Eighth Amendment to Lease and Consent to Assignment of Lease, dated December 27, 2017 ("Eighth Amendment"). [Id. at ¶ 14 & Exh. 3 (Eighth Amendment).] The Eighth Amendment notes that Lava Coast and RCSH had an asset purchase agreement for RCSH to purchase "the majority of [Lava

---

[2] Aloha Investment and Lava Coast entered into a series of amendments to the Lease. See Complaint at ¶ 12 & Exh. 2 (copies of the first seven amendments).

2

Coast]'s assets related to the Premises." [Complaint, Exh. 3 at 1.] AT ML consented to the assignment, subject to the terms of the Eight Amendment, and RCSH assumed responsibility to perform as the tenant under the Lease. [Id. at 3.]

AT ML alleges that, for the months from March 2020 through April 2021, RCSH failed to make complete payments of the monthly portions of the Minimal Annual Rental and "monthly charges for taxes, elevator maintenance, marketing, common area maintenance charges ('CAMs'), certain utilities, and for certain reserves (collectively, the 'Monthly Rental Charges')," which constitutes an "Event of Default" under § 14.1.1 of the Lease. [Complaint at ¶¶ 15-17.] AT ML sent RCSH default notices on April 22, 2020, December 3, 2020, and February 3, 2021. [Id. at ¶ 18 & Exhs. 4-6.]

The parties agree that RCSH ceased operating its restaurant at the Premises in March 2020 and did not reopen the restaurant. [Complaint at ¶¶ 20-21; Answer at ¶¶ 20-21 (admitting those portions of Complaint ¶¶ 20-21).] AT ML alleges that, because RCSH ceased operating the restaurant, "the Premises fell into disrepair and food and other perishable items began to rot inside the Premises," which violated the Lease's requirement that RCSH, "'at its own cost and expense, to repair, maintain in good and tenantable condition and replace, as

necessary, the Premises and every part thereof . . . .'" [Complaint at ¶ 19 (quoting Lease § 11.1); id. at ¶ 23.]

It is undisputed that AT ML took possession of the Premises in March 2021. [Complaint at ¶ 24; Answer at ¶ 24 (admitting that AT ML locked RCSH out of the Premises).] AT ML asserts that, when it took possession, it "discovered extensive evidence of [RCSH]'s failure to maintain the Premises," and AT ML lists thirteen alleged "Maintenance Defaults." [Complaint at ¶ 24.] On March 8, 2021, AT ML sent RCSH a letter ("3/8/21 Letter") to notify RCSH of its default of the Lease because of the Maintenance Defaults and to reiterate that it was in default because of the continuing failure to pay the Monthly Rental Charges ("Rent Defaults"). The 3/8/21 Letter demanded that RCSH cure the Maintenance Defaults within ten days of its receipt of the letter. [Id. at ¶ 25 & Exh. 7 (3/8/21 Letter).]

According to AT ML, RCSH refused to, or failed to, cure the Rent Defaults and the Maintenance Defaults. [Complaint at ¶ 26.] AT ML issued a letter, dated April 27, 2021 ("4/27/21 Letter"), terminating the Lease, pursuant to § 14.2.3 of the Lease. [Id. at ¶ 27 & Exh. 8 (4/27/21 Letter).]

AT ML alleges that, as of April 27, 2021, it was entitled to $515,825.46 in past due amounts, which includes: $450,572.52 in unpaid rent, CAMs, taxes, and "other reimburseables"; $20,182.67 in accrued interest; and $45,070.27

4

in late fees.  [Complaint at ¶ 28.]  AT ML also argues it is entitled to recover: costs associated with repairs and remediation required because of the Maintenance Defaults; lost rent for the period after the Lease was terminated, absent mitigation; interest; attorney's fees and costs; and any other appropriate relief.

In response, RCSH asserts it was "forced to temporarily suspend operations at the premises" because of the "unforeseen, intervening, and ongoing emergency pandemic, along with drastic, unprecedented governmental responses thereto." [Answer at ¶ 20.]  RCSH also asserts it would not have been feasible to reopen the restaurant at any time before AT ML's "self-help by change the locks on the premises."  [Id. at ¶ 21.]

According to RCSH, "[t]he intended and sole purpose of the Lease" was for it "to use the premises to operate a full-scale, sit-down restaurant" in the Shopping Center ("Restaurant").  [Counterclaim (dkt. no. 11-1) at ¶ 6 (citing Lease §§ 1.6, 4.1, 4.4; Amendments 4-6 to the Lease (determining rental payments based on a percentage of the Restaurant's revenue)).]  RCSH argues its "obligations under the Lease are based entirely on th[e] basic understanding and expectation" that it "would be allowed and able to operate the Restaurant to generate revenue."  [Id.]

According to the Counterclaim, before the COVID-19 pandemic, the Restaurant relied heavily on tourists and part-time residents of the area for its revenue base, and one percent or less of the Restaurant's revenue came from take-out orders. [Id. at ¶¶ 7-8.] Thus, the Restaurant "was particularly hard hit" by the pandemic. [Id. at ¶ 9.] In March 2020, "[b]ecause of this near-total lack of business, and Governor Ige's March 23, 2020 stay-home order, [RCSH] was forced to close the Restaurant's dining room, denying the use and enjoyment of the premises, frustrating the sole purpose of the Lease, and depriving [RCSH] of the benefit of its bargain." [Id. at ¶ 12.] RCSH kept the Restaurant open for take-out orders for two additional weeks, but even that use of the Premises was "impracticable and commercially impossible," forcing RCSH to close the Restaurant completely. [Id. at ¶ 13.] RCSH asserts that, when it closed the Restaurant, it removed perishable items from the Premises. [Id. at ¶ 18.]

RCSH anticipated reopening the Restaurant, when possible, and it furloughed its employees, rather than terminating them. [Id. at ¶ 17.] However, RCSH was ultimately unable to open for in-person dining or take-out service since April 2020, and it therefore has had no revenue since then, which made paying the rent impossible. [Id. at ¶¶ 19-20.]

In April 2020, through a third-party, RCSH contacted AT ML "to propose amendments to the Lease to allow a mutually-beneficial deferral, given the dire circumstances." [Id. at ¶ 20.] RCSH and RCSH's attorney attempted to contact AT ML during the spring, summer, and fall of 2020, but all of those efforts were "rebuffed." [Id. at ¶ 21.] RCSH continued to propose similar arrangements, but AT ML refused the offers and ultimately filed the instant case. [Id. at ¶¶ 22-26.]

The parties agree that, in January 2021, AT ML changed the locks on the Restaurant doors and failed to provide RCSH with a key. RCSH was locked out of the Premises since that time. [Id. at ¶ 29; Answer to Counterclaim and Affirmative Defenses, filed 7/6/21 (dkt. no. 18), at ¶ 29 (admitting the allegations in Counterclaim ¶ 29).] RCSH argues this action deprived it of "[a]ll of Ruth's Chris' valuable restaurant fixtures, equipment, computer systems, wine, spirits, pantry inventory, supplies, furniture, and other personal property." [Counterclaim at ¶¶ 30-31.]

The Counterclaim alleges the following claims: breach of the Lease ("Counterclaim Count I"); a violation of AT ML's contractual duty of good faith ("Counterclaim Count II"); wrongful actual and constructive eviction ("Counterclaim Count III"); breach of the implied warranty of quiet enjoyment ("Counterclaim Count IV"); conversion ("Counterclaim Count V");

replevin ("Counterclaim Count VI"); a claim seeking reformation of the Lease ("Counterclaim Count VII"); and a claim for declaratory relief ("Counterclaim Count VIII"). In the instant Motion, AT ML argues it is entitled to judgment on the pleadings as to all claims in the Counterclaim.

## STANDARD

This district court has stated:

> Rule 12(c) of the Federal Rules of Civil Procedure states, "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion. Gregg v. Hawaii, Dep't of Pub. Safety, 870 F.3d 883, 887 (9th Cir. 2017); United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011); Dworkin v. Hustler Mag. Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).
>
> "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." Gregg, 870 F.3d at 887; accord Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." (quotation marks, alteration signals, and citation omitted)).

Sam v. Dep't of Pub. Safety, CIVIL NO. 20-00164 SOM-RT, 2021 WL 1032282, at *1-2 (D. Hawai`i Mar. 17, 2021).

8

**DISCUSSION**

I.  **Counterclaim Waiver**

AT ML first argues it is entitled to judgment on the pleadings because the Lease contains a counterclaim waiver. The Lease states:

> **18.18  Waiver of Jury Trial and Counterclaims.**  The parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use and occupancy of the Premises, and/or any claim of injury or damage.  **In the event Landlord commences any proceedings for nonpayment of Minimum Annual Rental, Percentage Rental or Additional Rent, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding.**  This shall not, however, be construed as a waiver of Tenant's right to assert such claims in any separate action or actions brought by Tenant.

[Complaint, Exh. 1 (dkt. no. 1-1) at 34-35 (second emphasis added).] The Lease provides that it is governed by Hawai`i law. [Id. at 33, § 18.3.]  The construction and legal effect of the counterclaim waiver provision are questions of law.  See Joy A. McElroy, M.D., Inc. v. Maryl Grp., Inc., 107 Hawai`i 423, 430, 114 P.3d 929, 936 (Ct. App. 2005).

There is no Hawai`i Supreme Court decision addressing whether contractual waivers of the ability to assert counterclaims are enforceable.

> When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.

Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011) (citations and internal quotation marks omitted). In Joy A. McElroy, M.D., Inc., the Hawai`i Intermediate Court of Appeals ("ICA") addressed whether a lease provision waiving the right to a jury trial was enforceable and whether the provision applied to the claims in that case. 107 Hawai`i at 430-31, 114 P.3d at 936-37. The issue of whether a contractual jury trial waiver is enforceable is analogous to the issue of whether the Lease's counterclaim waiver provision is enforceable. Further, the ICA's analysis in Joy A. McElroy, M.D., Inc. is based upon well-established principles of Hawai`i contract law. This Court therefore predicts that the Hawai`i Supreme Court would employ a similar analysis to the analysis in Joy A. McElroy, M.D., Inc. to decide whether a contractual counterclaim waiver provision is enforceable.

The goal in interpreting a provision of a contract under Hawai`i law is to determine the parties' intent, and the primary method used to determine that intent is to examine the contract as a whole. Id. at 430, 114 P.3d at 936. AT ML and

RCSH are sophisticated business entities and, viewing the Lease as a whole, it is clear that AT ML and RCSH agreed to the waiver.  This Court therefore concludes that the counterclaim waiver provision in the Lease is generally enforceable.

Other courts, however, have ruled that counterclaim waivers are not enforceable as to compulsory counterclaims. See, e.g., Banque Indosuez v. Trifinery, 817 F. Supp. 386, 387 (S.D.N.Y. 1993) ("It is not fair to enforce the contractual waiver of defendants' counterclaim if that counterclaim is compulsory under [Fed. R. Civ. P.] 13(a)."); Loader Leasing Corp. v. Kearns, 83 F.R.D. 202, 204 (W.D. Pa. 1979) (ruling that a counterclaim waiver is "unenforceable with respect to compulsory counterclaims in a federal forum" because enforcing it "would misconstrue the intent of the parties, unreasonably restrict the privilege of litigating a claim and limit the jurisdiction of the district courts").  There is no Hawai`i case law addressing the issue of whether an otherwise valid counterclaim waiver applies to compulsory counterclaims, but this Court predicts the Hawai`i Supreme Court would adopt an analysis similar to that in Loader Leasing and Banque Indosuez.

Under both federal law and Hawai`i state law, a defendant who fails to plead a compulsory counterclaim is precluded from subsequently asserting that claim as the plaintiff in a separate action.  See, e.g., Mitchell v. CB

11

Richard Ellis Long Term Disability Plan, 611 F.3d 1192, 1201 (9th Cir. 2010); E. Sav. Bank, FSB v. Esteban, 129 Hawai`i 154, 161 n.13, 296 P.3d 1062, 1069 n.13 (2013).  Thus, if § 18.18 of the Lease is enforced as to RCSH's claims that are deemed compulsory counterclaims in this case, RCSH would not be able to file a separate action to litigate those claims.  Such an interpretation of § 18.18 "would misconstrue the intent of the parties, unreasonably restrict [RCSH's] privilege of litigating a claim and limit the jurisdiction of th[is] district court[]."  See Loader Leasing, 83 F.R.D. at 204.  This Court therefore predicts that the Hawai`i Supreme Court would hold that the Lease's counterclaim waiver provision is unenforceable as to compulsory counterclaims.

Turning to the issue of which, if any, of RCSH's counterclaims are compulsory, this Court first notes that Counterclaim Count VIII - RCSH's claim for declaratory relief - is merely a request for a remedy, and it is duplicative of the remedies sought in other claims within the Counterclaim.  See Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc., 870 F. Supp. 2d 1015, 1028 n.1 (D. Hawai`i 2012) (citing Seattle Audubon Soc'y v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which

either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so.") (citation and quotation marks omitted)).  Because Counterclaim Count VIII is not an independent cause of action, it cannot be a compulsory counterclaim.

Counterclaim Counts I through VII are compulsory counterclaims if they "arise[] out of the transaction or occurrence that is the subject matter of" AT ML's Complaint. See Fed. R. Civ. P. 13(a)(1)(A).[3]  In determining whether Fed. R. Civ. P. 13(a)(1)(A) is satisfied, this Court "appl[ies] 'the liberal "logical relationship" test[.]'"  See Liberty Dialysis-Haw. LLC v. Kaiser Found. Health Plan, Inc., Civ. No. 17-00318 JMS-RLP, 2018 WL 1801794, at *7 (D. Hawai`i Apr. 16, 2018) (quoting Pochiro v. Prudential Ins. Co. of Am., 827 F.2d 1246, 1249 (9th Cir. 1987)).[4]  The logical relationship test is a

---

[3] Fed. R. Civ. P. 13(a)(1)(B) also requires that any additional parties to the counterclaim be parties over whom the district court can acquire jurisdiction.  That requirement is not at issue here because the only defendant in RCSH's Counterclaim is AT ML.

[4] Rule 13(a) of the Hawai`i Rules of Civil Procedure "is substantively identical to its federal counterpart[,]" and Hawai`i courts also apply the "logical relationship" test. JPMorgan Chase Bank, N.A. v. Moniz, CIVIL NO. 15-00512 DKW-BMK, 2016 WL 6433841, at *3 (D. Hawai`i Oct. 25, 2016) (citing Booth v. Lewis, 8 Haw. App. 249, 253, 798 P.2d 447, 449 (1990); Eastern Savings Bank, FSB v. Esteban, 129 Hawaii 154, 161 n.13, 296 P.3d 1062, 1069 n.13 (2013)).

"flexible approach" that "attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Pochiro, 827 F.2d at 1249 (quotation marks and citation omitted). The test is satisfied in the instant case because: the Complaint alleges AT ML is entitled to various payments because of RCSH's defaults on the Lease, including the failure to pay Lease rents; and the Counterclaim alleges that RCSH's nonpayment of Lease rents was excusable and that AT ML breached the Lease by, *inter alia*, locking RCSH out of the Premises. This Court therefore concludes that the claims in the Counterclaim – with the exception of Counterclaim Count VIII – are compulsory counterclaims, and the counterclaim waiver in the Lease does not apply to those claims.

With regard to the argument that AT ML is entitled to judgment on the pleadings based on the counterclaim waiver provision in the Lease, the Motion is GRANTED as to Counterclaim Count VIII, and DENIED as to the other claims in RCSH's Counterclaim.

## II. Economic Loss Rule

AT ML next argues Counterclaim Counts III, IV, and V must be dismissed under the economic loss rule. [Mem. in Supp. of Motion at 7.] Between parties to a contract, "[t]he economic

14

loss rule bars recovery in tort for purely economic loss." Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc., 115 Hawai`i 232, 286, 167 P.3d 225, 279 (2007) (emphasis and citation omitted). Because the economic loss rule precludes tort claims, by definition, the rule does not apply to non-tort claims. See Francis v. Lee Enters., Inc., 89 Hawai`i 234, 235, 971 P.2d 707, 708 (1999) ("Hawai`i law will **not** allow **tort recovery** in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract." (first emphasis in original)).

Counterclaim Count V alleges conversion, which is defined as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein . . . or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession permanently or for an indefinite time." See Yoneji v. Yoneji, 136 Hawai`i 11, 16, 354 P.3d 1160, 1165 (Ct. App. 2015) (quoting Tsuru v. Bayer, 25 Haw. 693, 697 (Haw. Terr. 1920)). Further, the elements of a conversion claim are: "'(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand.'" Id. (quoting Freddy Nobriga

15

Enterprises, Inc. v. State, Dep't of Hawaiian Home Lands, 129 Hawai`i 123, 129, 295 P.3d 993, 999 (App. 2013) (quoting Tsuru, 25 Haw. at 696)). This Court concludes that, based on the definition and elements of a conversion claim under Hawai`i law, conversion is a tort claim.

RCSH acknowledges that conversion is a tort claim, but RCSH argues Counterclaim Count V is not subject to the economic loss rule because there is an independent duty not to take property without legal authority, and that duty is independent of any contractual duty. [Mem. in Opp., filed 10/11/21 (dkt. no. 31), at 10-11 (citing Ares Funding, L.L.C. v. MA Maricopa, L.L.C., 602 F. Supp. 2d 1144, 1149 (D. Ariz. 2009)).] The district court in Ares Funding ruled that the plaintiff's conversion claim was not barred by the economic loss rule because of this independent duty. 602 F. Supp. 2d at 1149 (citing Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865 (9th Cir. 2007)). First, Ares Funding was based on Arizona law, and Giles was based on Nevada law. See Ares Funding, 602 F. Supp. 2d at 1148; Giles, 494 F.3d at 869.[5] Moreover, the Ninth Circuit

---

[5] The Ninth Circuit noted that,

> based on our reading of the Nevada cases, Nevada's economic loss doctrine is generally consistent with the principles discernable in the case law of other jurisdictions. Broadly speaking, Nevada applies the economic loss
>
> (. . . continued)

held that the conversion claim was not barred by the economic loss rule because the claim alleged the conversion of "open account funds by taking these funds without a valid assignment" and this allegation was not duplicative of the contract claim because "none of the parties' prior agreements actually provided for the assignment of the open account funds[.]"  Giles, 494 F.3d at 880.

To the extent that Arizona and/or Nevada law recognizes an independent duty under tort law not to take property without legal authority, there is no Hawai`i case law recognizing a comparable legal duty.  Further, RCSH's conversion claim in this case is based upon the same contractual duties that are at issue in AT ML's Complaint and RCSH's contract-based compulsory counterclaims.  Giles and Ares Funding therefore are not persuasive.  Counterclaim Count V is barred by the economic

---

> doctrine to bar recovery in tort for purely monetary harm in product liability and in negligence cases unrelated to product liability. Nevada law may also bar recovery for other tort claims where the plaintiff's only complaint is that the defendant failed to perform what was promised in the contract.  But it does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff.

Giles, 494 F.3d at 879.

17

loss rule, and AT ML is entitled to judgment on the pleadings as to that claim.

The Court rejects AT ML's argument that Counterclaim Counts III and IV are barred by the economic loss rule because, based on the nature of those claims and the specific allegations in this case, those claims sound in contract. See, e.g., Counterclaim at ¶ 44 (seeking, as one of the remedies for Counterclaim Count III, "re-possession of the premises"); id. at ¶ 47 (alleging in Counterclaim Count IV that AT ML interfered with RCSH's use of the Premises and that AT ML "capitaliz[ed] on COVID-19 [by] opportunistically terminat[ing] the Lease").  The Court also concludes that Counterclaim Count I (breach of contract), Counterclaim Count II (breach of the duty of good faith), Counterclaim Count VI (replevin), and Counterclaim Count VII (reformation of the Lease) sound in contract.  Because Counterclaim Counts I, II, III, IV, VI, and VII sound in contract, they are not barred by the economic loss rule.

To the extent that the Motion seeks judgment on the pleadings in favor of AT ML based on the economic loss rule, the Motion is granted as to Counterclaim Count V and denied as to the other remaining counterclaims.

## CONCLUSION

For the foregoing reasons, AT ML's Motion for Judgment on the Pleadings, filed September 3, 2021, is HEREBY GRANTED IN

PART AND DENIED IN PART.  The Motion is GRANTED, insofar as judgment on the pleadings is GRANTED in favor of AT ML as to Counterclaim Counts V and VIII.  The Motion is DENIED as to Counterclaim Counts I, II, III, IV, VI, and VII.

       IT IS SO ORDERED.

       DATED AT HONOLULU, HAWAII, December 21, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

AT ML LEASEHOLD HI, LLC V. RCSH OPERATIONS INC.; CV 21-00236 LEK-WRP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS